UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARWIN J. GUTIERREZ-FLORES,

        Plaintiff,

        v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

        Defendants.

        22-CV-57-LJV
        DECISION & ORDER

---

On January 20, 2022, the *pro se* plaintiff, Darwin J. Gutierrez-Flores, commenced this action under the Federal Tort Claims Act ("FTCA"), asserting claims that arise from his 2014 removal to Honduras and the related removal proceedings. Docket Item 1.  He has sued the Department of Justice ("DOJ"); Immigration and Customs Enforcement ("ICE"); the Department of Homeland Security ("DHS"); and Michael Phillips, a Control Officer for ICE's Enforcement and Removal Operations. *Id.* On May 26, 2023, the DOJ, ICE, and DHS (the "moving defendants") moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Docket Item 15, and on November 14, 2023, Gutierrez-Flores responded, Docket Item 21.  The moving defendants did not reply, and the time to do so has passed. *See* Docket Item 22.

For the reasons that follow, the motion to dismiss is granted.

**BACKGROUND**[1]

Gutierrez-Flores was born in Honduras on May 9, 1980, Docket Item 1 at 13, to parents who never married, Docket Item 15-5 at 2; *see* Docket Item 1 at 76.  He entered the United States on September 3, 1992, Docket Item 1 at 78, and his mother, Azucena Flores, became a United States citizen on June 7, 1996, when Gutierrez-Flores was 16 years old, *id.* at 28; *see id.* at 17.

In 2001, Gutierrez-Flores was "enjoined under a protection order issued by the North Tonawanda City Court."  Docket Item 15-2 at 1.  In December 2002, that court "determined that [Gutierrez-Flores] had engaged in conduct that violated a portion of" the protection order involving "credible threats of violence, repeated harassment, or bodily injury."  *Id.*  Gutierrez-Flores then was held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") from February 11, 2003, until December 13, 2004.  Docket Item 1 at 52.

---

[1] On a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The same standard applies to a "facial" motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 572 (S.D.N.Y. 2021) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016)).

The following facts are taken from the complaint, Docket Item 1, the documents attached to it, *id.*, and the documents from Gutierrez-Flores's removal proceedings that the moving defendants submitted and that the Court finds are integral to the complaint, Docket Items 15-2, 15-3, 15-4, 15-5, 15-6, 15-7, 15-8, and 15-9.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (on a motion to dismiss, a court may consider any written documents that are attached to the complaint, incorporated by reference, or integral to it).  The facts are viewed in the light most favorable to Gutierrez-Flores.

Some capitalization is omitted in citations taken from the complaint and the documents attached to the complaint.

Shortly after Gutierrez-Flores's incarceration began, DOCCS reported that he was "believed to be" a noncitizen. *Id.* at 55. So on June 13, 2011, DHS initiated removal proceedings against Gutierrez-Flores by issuing a Notice to Appear. *Id.* at 19; *see* Docket Item 15-2. That notice stated that Gutierrez-Flores was "subject to removal from the United States" because he was a noncitizen who had "engaged in conduct in violation of [a protection] order that involves protection against credible threats of violence, repeated harassment, or bodily injury."[2] Docket Item 15-2.

On March 27, 2012, an immigration judge ("IJ") ordered Gutierrez-Flores removed to Honduras. Docket Item 1 at 30; *see* Docket Item 15-4. Gutierrez-Flores unsuccessfully appealed that decision to both the Board of Immigration Appeals ("BIA"), *see* Docket Item 15-5, and the Second Circuit, *see* Docket Item 15-6. At each stage of the proceeding, Gutierrez-Flores asserted that he had obtained derivative United States citizenship when his mother was naturalized in 1996. *See* Docket Item 15-4 at 1-2; Docket Item 15-5 at 1; Docket Item 15-6 at 1-2. But the IJ, the BIA, and the Second Circuit all rejected that argument. *See* Docket Item 15-4 at 5-13 (IJ decision finding that Gutierrez-Flores "has not carried his burden of persuasion to demonstrate that he has derived United States citizenship"); Docket Item 15-5 (BIA decision dismissing Gutierrez-Flores's appeal because he "did not meet his burden" of "coming forward with the evidence to substantiate his citizenship claim"); Docket Item 15-6 (Second Circuit

---

[2] DHS later supplemented the Notice to Appear with charges that Gutierrez-Flores was subject to removal because he had been "convicted of an aggravated felony crime of violence." *See* Docket Item 15-4 at 2. But that does not affect the analysis here.

decision holding that the BIA "did not err in finding that [Gutierrez-Flores] did not establish his eligibility for derivative citizenship").

Gutierrez-Flores therefore was removed to Honduras in March 2014. *See* Docket Item 1 at 3. But just a short time later, the BIA issued a decision, *Matter of Cross*, 26 I&N Dec. 485 (BIA 2015), that gave Gutierrez-Flores a "colorable" claim to citizenship. *See* Docket Item 15-3 (Second Circuit decision denying the government's motion to dismiss Gutierrez-Flores's petition to reopen his removal proceedings); *see also* Docket Item 1 at 26 (BIA decision noting that Gutierrez-Flores "has proffered evidence that he is now a United States citizen"). So DHS authorized Gutierrez-Flores's parole back into the United States, Docket Item 1 at 14; on December 11, 2016, Gutierrez-Flores returned to the United States, *id.* at 15; and on December 22, 2016, Gutierrez-Flores was issued a Certificate of Citizenship, *id.* at 13.

On August 20, 2019—more than two-and-a-half years later—Gutierrez-Flores filed an administrative tort claim with the DOJ in connection with his immigration proceedings and subsequent removal. *Id.* at 6. More specifically, he alleged that DHS unlawfully detained and deported him despite his repeated "efforts to explain" that he was a United States citizen. *Id.* at 18. He also alleged that "ICE failed to reasonably investigate" his citizenship claim, costing him "nearly [three] years of [his] life in DHS custody and [two-and-a-half] years as a deportee in Honduras." *Id.* As a result, Gutierrez-Flores said, he suffered "mental and emotional distress" and missed "family events." *Id.* He asserted FTCA claims for, *inter alia*, false imprisonment, false arrest, malicious prosecution, and negligence. *Id.* at 22.

4

On August 13, 2021, the DOJ denied Gutierrez-Flores's FTCA claims.  *Id.* at 6.

Gutierrez-Flores commenced this action on January 20, 2022, about five months later.

*Id.* at 5.  He seeks money damages.  *Id.*

**LEGAL PRINCIPLES**[3]

**I.      RULE 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting

subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists."  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

**II.     RULE 12(b)(6)**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more

---

[3] A motion to dismiss on the ground that a plaintiff has sued a defendant who is not amenable to suit under the FTCA is brought under Rule 12(b)(1), *see Levinson v. United States*, 594 F. Supp. 3d 559, 567 (S.D.N.Y. 2022), and a motion to dismiss based on the FTCA's statute of limitations is brought under Rule 12(b)(6), *see Abdoulaye v. Cimaglia*, 2018 WL 1890488, at *2-3 (S.D.N.Y. Mar. 30, 2018).

than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*,

550 U.S. at 556).

## DISCUSSION

**I.      DEFENDANTS NOT AMENABLE TO SUIT**

"FTCA claims cannot be asserted against employees concerning conduct within

the scope of their employment." *Levinson*, 594 F. Supp. 3d at 568 (citing 28 U.S.C.

§ 2679(a), (d); *Rivera v. United States*, 928 F.2d 592, 608-09 (2d Cir. 1991)).  Similarly,

"[a] federal agency is not a proper defendant under the FTCA." *Page v. Oath Inc.*, 2018

WL 1406622, at *3 (S.D.N.Y. Mar. 20, 2018) (citations omitted), *aff'd sub nom. Page v.*

*U.S. Agency for Glob. Media*, 797 F. App'x 550 (2d Cir. 2019) (summary order).  Rather,

"a suit against the United States is the exclusive remedy" under the FTCA.  *Rivera*, 928

F.3d at 608.  In other words, as the moving defendants argue, Docket Item 15-10 at 15,

the only defendant Gutierrez-Flores can sue under the FTCA is the United States, and

this Court therefore lacks subject matter jurisdiction over his claims.

Gutierrez-Flores's FTCA claims against the DOJ, ICE, DHS, and Phillips[4]

therefore are dismissed without leave to amend because amendment would be futile.

*See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  In light of Gutierrez-Flores's

*pro se* status, however, the Court considers whether he should be allowed to amend his

complaint to assert an FTCA claim against the United States.

---

[4] Although Phillips has not appeared in this action, the Court may dismiss the claims against him because that dismissal is based on lack of subject matter jurisdiction.  *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 449 (2d Cir. 2013) (noting that a court may raise the issue of subject matter jurisdiction *sua sponte*).

II.     STATUTE OF LIMITATIONS

An FTCA claim "shall be forever barred unless it is presented in writing to the appropriate [f]ederal agency within two years after such claim accrues or unless action is begun within six months . . . of notice of final denial of the claim by the agency to which it was presented."  28 U.S.C. § 2401(b).  "Despite section 2401(b)'s use of the word 'or' to join its requirements, FTCA claimants must comply with both the two-year filing of claim and the six-month filing of suit requirements."  *Abdoulaye*, 2018 WL 1890488, at *3 (citing, *inter alia*, *Willis v. United States*, 719 F.2d 608, 612-13 (2d Cir. 1983)).  In other words, an FTCA claim is time barred unless a plaintiff both (1) files a claim with the appropriate federal agency within two years of the date the claim accrues and (2) files suit within six months of the agency's denial of that claim.

"[T]he time bars in section 2401(b) are non-jurisdictional and [therefore] subject to equitable tolling."  *Id.* (citation omitted).  A plaintiff is entitled to equitable tolling if he "(1) has acted with reasonable diligence during the time period he seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Id.* at *4 (alterations and internal quotation marks omitted) (quoting *Zerini-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003)).

Gutierrez-Flores timely filed suit within six months of the DOJ's denial of his claim.  *See generally* Docket Item 1.  But he filed that administrative claim on August 20, 2019, *see id.* at 6, so he can assert only those claims that accrued within two years of that date—that is, on or after August 20, 2017.

As the defendants argue, Gutierrez-Flores's tort claims "accrued well before that time."  Docket Item 15-10 at 16-17.  Gutierrez-Flores was served a Notice of Appearance in July 2011, Docket Item 1 at 19; *see* Docket Item 15-2, and he was

7

removed to Honduras in March 2014, *see* Docket Item 1 at 3.  He returned to the United

States and was issued a Certificate of Citizenship in December 2016.  *Id.* at 13-15.

Gutierrez-Flores complains of the distress he suffered while he was detained and before

he re-entered the United States, but all that occurred long before August 2017.  *See*

Docket Item 15-10 at 17 (arguing that "no even arguably tortious conduct occurred after"

August 2017 because Gutierrez-Flores "had already been paroled back into the United

States and issued a certificate of citizenship by December 2016").  So Gutierrez-

Flores's claims are time barred unless he is entitled to equitable tolling.

In response to the motion to dismiss, Gutierrez-Flores does not argue that he is

entitled to equitable tolling.  *See* Docket Item 21.  Nor does the complaint suggest any

reason why equitable tolling might apply.  *See* Docket Item 1.  Any claim that Gutierrez-

Flores has against the United States therefore would be subject to dismissal because

his administrative complaint was untimely.

## III.    IMPACT OF CHANGE IN LAW

According to the moving defendants, timeliness is not the only bar to a potential

claim against the United States:  They argue that Gutierrez-Flores seeks to hold the

United States liable for enforcing then-existing law, something he cannot do under the

FTCA.  Docket Item 15-10 at 17-23.  While the underlying law and analysis are

somewhat complicated, the moving defendants' characterization of Gutierrez-Flores's

claim is correct, as is their contention that Gutierrez-Flores does not have a viable

FTCA claim.

### A.   Changing Law on Legitimation

As the moving defendants explain, Gutierrez-Flores's derivative citizenship claim

is governed by former section 321(a) of the Immigration and Nationality Act ("INA"), 8

U.S.C. § 1432 (repealed 2000).  Docket Item 15-10 at 9-11; *see Gil v. Sessions*, 851

F.3d 184, 186-87 (2d Cir. 2017).  That statute provided that an unmarried child under 18

years of age who meets certain residency requirements obtains derivative United States

citizenship in three circumstances:

    (1) The naturalization of both parents; or

    (2) The naturalization of the surviving parent if one of the parents is
        deceased; or

    (3) The naturalization of the parent having legal custody of the child when
        there has been a legal separation of the parents or the naturalization of
        the mother if the child was born out of wedlock and the paternity of the
        child has not been established by legitimation . . . .

8 U.S.C. § 1432(a) (repealed 2000).

During his removal proceedings, Gutierrez-Flores argued that he obtained

derivative citizenship through section 321(a)(3) because his mother was naturalized

before he turned 18, he was born out of wedlock, and his paternity had not been

established by legitimation.  *See* Docket Item 15-4 at 5-7.  More specifically, Gutierrez-

Flores argued that he was not legitimated under Honduran law because his parents

never married.  *See id.*

"Although the INA does not define the term 'legitimated,' the BIA has interpreted

it 'to refer to a child born out of wedlock who has been accorded legal rights that are

identical to those enjoyed by a child born in wedlock.'"  *Gil*, 851 F.3d at 187 (citation

omitted).  "Legitimacy is determined by the law of the country in which [an individual]

was born."  *Poole v. Mukasey*, 522 F.3d 259, 265 n.3 (2d Cir. 2008) (citation omitted).

At the time Gutierrez-Flores was removed, the governing BIA precedent on the law of Honduran legitimation was *Matter of Sanchez*, 16 I&N Dec. 671 (BIA 1979).  That decision determined that the Honduran Constitution of 1957 "eliminated the . . . distinctions made between children born in wedlock and those born out of wedlock," *id.* at 672—that is, it "abolished the legal distinction between legitimate and illegitimate children," Docket Item 15-6 at 2.  Thus, under *Sanchez*, all "children born in Honduras after December 21, 1957[, were] deemed legitimate for immigration purposes as a matter of law."  Docket Item 15-10 at 11 (quoting *In re: Applicant: [redacted]*, 2012 Immig. Rptr. LEXIS 13744, at *5 (AAO Oct. 12, 2012)).

So when they considered Gutierrez-Flores's derivative citizenship claim, the IJ, Docket Item 15-4 at 8-12, the BIA, Docket Item 15-5 at 3, and the Second Circuit, Docket Item 15-6 at 1-2, found that Gutierrez-Flores—who was born in Honduras after 1957—had failed to establish that he was not legitimated.  And for that reason, the IJ, the BIA, and the Second Circuit all found that Gutierrez-Flores did not obtain derivative citizenship under section 321(a)(3) when his mother was naturalized in 1996.

But in 2015, the BIA issued another decision, *Cross*, 26 I&N Dec. 485, that changed the legal landscape under section 321(a).  Under *Cross*, "where a jurisdiction requires an affirmative act to legitimate an out-of-wedlock child, paternity is not established without the requisite act, even if the jurisdiction has enacted a law to place children on equal footing without regard to the circumstances of their birth."  *Id.* at 490.

Even after the enactment of the Honduran Constitution of 1957—which "eliminated the legal distinctions between 'natural' and legitimate children"—Honduran law provided that "a child born out of wedlock can . . . be legitimated by the subsequent

10

marriage of their parents and a [public] statement by the parents . . . that they intend to grant the benefit of legitimation to said child."  Docket Item 15-7 at 3.  In other words, a child born out of wedlock would have the same legal rights as a "legitimate" child but would not become "legitimated" unless his parents took the affirmative steps just described.  Therefore, under *Cross*, because legitimation requires an "affirmative act" under Honduran law, "paternity is not established without the requisite act."  *See Cross*, 27 I&N Dec. at 490.

Gutierrez-Flores's father did not take the "requisite act" to legitimate him.  *See* Docket Item 15-7 at 3-4 (DHS's motion to terminate immigration proceedings).  So after *Cross* became the law of the land, Gutierrez-Flores could show that he was not legitimated.  *Id.*  And for that reason, Gutierrez-Flores became a derivative citizen under section 321(a)(3).

### B.    Impact on Gutierrez-Flores's Claim

Gutierrez-Flores now argues that "had [the government] reasonably investigated [his derivative citizenship] claim," it would not have detained and removed him.  Docket Item 1 at 18.  But that is not accurate.

Under 8 U.S.C. § 1226(c), the government "shall take into custody any [noncitizen] who . . . is deportable by reason of having committed" certain criminal offenses.  "[T]he 'shall' language in the statute prescribes a mandatory course of action."  *Nwozuzu v. United States* ("*Nwozuzu I*"), 2015 WL 4865772, at *6 (S.D.N.Y. Aug. 12, 2015).  In other words, detention of a noncitizen covered by section 1226(c) is required.

Gutierrez-Flores committed criminal offenses that rendered noncitizens removable under section 1226(c).  *See* Docket Item 15-2.  And, the moving defendants argue, Gutierrez-Flores "was simply not deemed a derivative citizen at the time of his release from state custody."  Docket Item 15-10 at 18.  Therefore, the moving defendants say, "DHS was required to detain" Gutierrez-Flores and its conduct "cannot be considered tortious under the FTCA [because] it was in compliance with the law as understood at the time the conduct was undertaken."  *Id.*

The moving defendants are correct:  "The FTCA's waiver of sovereign immunity is inapplicable . . . to 'any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid.'"  *Nwozuzu v. United States* ("*Nwozuzu II*"), 712 F. App'x 31, 32 (2d Cir. 2017) (summary order) (alteration omitted) (quoting 28 U.S.C. § 2680(a)).  In other words, the United States cannot be held liable for enforcing existing law unless its officers act without due care in that enforcement.  *See Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

A case similar to Gutierrez-Flores's is illustrative.  In *Nwozuzu*, the government detained the plaintiff despite his claim that he had acquired derivative citizenship when his parents were naturalized.[5]  *Nwozuzu I*, 2015 WL 4865722, at *1-2.  Nwozuzu pursued his derivative citizenship claim to the Second Circuit, which eventually determined that he was a citizen.  *See Nwozuzu II*, 712 F. App'x at 33.

---

[5] Although Nwozuzu's citizenship claim hinged on his residency status—another requirement for derivative citizenship—rather than his paternity, *Nwozuzu II*, 712 F. App'x at 33, the Second Circuit's ruling on his FTCA claim still is instructive here.

Nwozuzu then brought an FTCA claim, alleging that the government "did not act with due care because it should have known that he had acquired United States citizenship from his parents." *Id.* at 32-33.  The Second Circuit affirmed the dismissal of Nwozuzu's FTCA claim, holding that the legal issue underlying Nwozuzu's derivative citizenship claim was "unresolved" at the time of his detention.  *Id.* at 33.  "In light of such legal uncertainty when Nwozuzu was detained," the court said, "the district court properly concluded that the government acted with due care in interpreting that statute" and therefore could not be held liable under the FTCA.  *Id.*  In other words, Nwozuzu could not bring an FTCA claim because the question of whether he was a derivative citizen was a "legal uncertainty" when he was detained, precluding any argument that the government failed to exercise due care in addressing that question.  *Id.*

Gutierrez-Flores's FTCA claim is similarly barred.  Under *Sanchez*, which was the governing law at the time, Gutierrez-Flores was not a citizen when he was detained and removed to Honduras.  Any argument to the contrary is belied by the fact that the Second Circuit itself affirmed that interpretation of the law.  *See* Docket Item 15-6.  So under *Nwozuzu*, Gutierrez-Flores has no FTCA claim.

In fact, Gutierrez-Flores's FTCA claim is even weaker than Nwozuzu's:  The legal question underlying Nwozuzu's claim was merely unresolved, while the legal question underlying Gutierrez-Flores's claim was affirmatively resolved against him by the BIA and the Second Circuit at the time of the conduct at issue.  So if Nwozuzu had no claim, then Gutierrez-Flores certainly does not have one.

In sum, the United States cannot be held liable for applying the applicable law even if that law later changes.  *See Nwozuzu II*, 712 F. App'x at 33; *see also E. Enters.*

13

*v. Apfel*, 524 U.S. 498, 532 (1998) ("Retroactivity is generally disfavored in the law in accordance with 'fundamental notions of justice' that have been recognized throughout history." (citations omitted)). And Gutierrez-Flores cannot argue that the government failed to exercise due care by refusing to investigate his derivative citizenship claim, *see* Docket Item 1 at 18, because no degree of investigation would have changed the legal precedent foreclosing that claim.

## CONCLUSION

Gutierrez-Flores's FTCA claim fails for several reasons. An amended complaint might fix some of those flaws: Gutierrez-Flores could amend to sue the correct defendant and perhaps to plead facts establishing that he is entitled to equitable tolling. But the core of this action is a claim that the government should be held liable for enforcing the laws in place at the time of the challenged conduct. That is not permitted under the FTCA, and better pleading will not change that outcome.

Accordingly, the moving defendants' motion to dismiss, Docket Item 15, is GRANTED; Gutierrez-Flores's complaint, Docket Item 1, is DISMISSED, and the Clerk of the Court shall close this case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   January 30, 2024
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE